**C.E. RUNION, On Behalf of Himself and Others Similarly Situated, Plaintiff,**

v.

**U.S. SHELTER, f/k/a American Fletcher Mortgage Investors, Defendant.**

**J. Paul KITCHENS, et al., Plaintiffs,**

v.

**U.S. SHELTER (formerly American Fletcher Mortgage Investors), et al., Defendants.**

Civ. A. Nos. 83–0771–1, 82–1951–1.

United States District Court,
D. South Carolina,
Charleston and Greenville Divisions.

June 15, 1983.

---

**1.** To date the Second Circuit has not decided any cases on this issue.

Ray D. Lathan, and Barney Smith, Jr., Greenville, S.C., for Runion.

J. Kendall Few, and James R. Gilreath, Greenville, S.C., for Kitchens, et al.

Mason A. Goldsmith, Greenville, S.C., and Sidney O. Smith, Jr., and William C. Humphreys, Jr., and Steven M. Collins, Atlanta, Ga., for U.S. Shelter, U.S. Shelter Corp., N. Barton Tuck, Jr., Buck Mickel, Walter Clark, Edmund P. Cronin, Jr., Aubrey C. Doggett, Jr., William W. Kellett, Jr., William H. Orders, C.T. Wyche, Carroll W. Lindsey, Don R. Waldrop, Robert O. Taylor,

Gary R. Hediger, Robert R. Vergnolle, William N. Page, Douglas C. Brown, Joseph F. Sullivan & George M. Plyer.

R. Frank Plaxco, and James H. Watson, and Steven E. Farrae, Greenville, S.C., for Ernst & Whinney.

Robert Seaman, III, and Bothwell F. Graham, Columbia, S.C., for Paine-Webber, Inc.

Wilburn Brewer, and Paul A. Dominick, Columbia, S.C., for American Appraisal Associates, Inc.

Henry B. Smythe, and Marshall Winn, Charleston, S.C., and Richard Cheatham, and A. Stephens Clay, Atlanta, Ga., for Sullivan & Worcester, Daniel C. Hickey, L. Richard Horen, George A. Smathers, Frank J. Eicher, William C. Bolenius, Perry W. Morton, W. George Pinnell & Thomas E. Weesner.

W. Francis Marion, Jr., and Joseph J. Blake, Jr., and Ellis M. Johnston, II, Greenville, S.C., for Amreal Corp. and Foxfire Investors, Inc., and only as to count 9: N. Barton Tuck, Carroll W. Lindsey, Don R. Waldrop, Robert O. Taylor, Gary R. Hediger, Robert R. Vergnolle & George M. Plyler.

## ORDER

HAWKINS, District Judge.

This matter is before the court following a Rule to Show Cause hearing on June 7, 1983, wherein the plaintiffs in the case of *Kitchens, et al. v. U.S. Shelter, et al.,* Civil Action No. 82–1951–1, were instructed to show cause why the relief sought in the Joint Motion for Conditional Approval of Settlement Agreement and Certificate of Tentative Settlement Class filed in *Runion v. U.S. Shelter,* Civil Action No. 83–0771–1, should not be granted. Both actions were filed as class actions, and the class members could overlap. In addition, plaintiffs in the *Kitchens* case filed numerous motions on May 9, 1983, including a motion to consolidate the two lawsuits mentioned above, a

motion to intervene for the purpose of challenging the adequacy of the class representative in the *Runion* case and a motion to disqualify counsel in the *Runion* suit, to the extent such counsel purported to represent the class.

On August 3, 1982,[1] a complaint was filed for alleged violations of the anti-fraud provisions of the federal and state securities laws. Thus, the *Kitchens* case was born. The Complaint named thirty-three defendants, purported to be a class action, and had nine separate causes of action. All the allegations in the complaint centered around an Exchange Offer wherein U.S. Shelter (formerly known as American Fletcher Mortgage Investors) offered to eighteen different Limited Partnerships stock in its company in exchange for the apartment complexes that the Limited Partnerships owned. Twelve of the eighteen Limited Partnerships voted to participate in the Exchange Offer, thereby receiving stock in U.S. Shelter. The *Kitchens* complaint purported to name as the putative class all individual limited partners of the twelve participating Limited Partnerships, excluding anyone who was named as a defendant.

Although the Amended Complaint is a detailed, fifty-two page document, the essence of the allegations are that U.S. Shelter and the other defendants manipulated the appraisal values of the apartment complexes owned by the Limited Partnership, and misrepresented in the Prospectus and Registration Statement that the value of U.S. Shelter stock would be $5.50 per share.[2]

The *Kitchens* case had progressed to the stage of litigation where the plaintiffs had made a motion for class certification, briefs had been filed by all the parties, and the court was pondering the class certification issue. Then, Mr. C.E. Runion filed his law-

---

1. An Amended Complaint was filed on August 23, 1983, but the only difference this court can find was the naming of three more class representatives.

2. The court is well aware of other allegations in the Amended Complaint, but for purposes of this order, this simplified rendition should suffice.

suit on March 30, 1983.[3] The Runion suit also purported to be a class action. Although neither lawsuit described the extent of the class they wish to represent, it appeared that both suits sought as their class all the limited partners of the twelve Limited Partnerships participating in the U.S. Shelter Exchange Offer.[4]

The *Runion* case named only U.S. Shelter as the defendant. To further simplify matters, the only fraud alleged in the *Runion* case was that the Prospectus misrepresented the value of the U.S. Shelter stock. According to the allegations, the Prospectus represented, without any specifics, that the stock would have a value of $5.50 per share following the Exchange offer. However, the court has been advised that the stock traded for less than half that amount following the exchange.

Shortly after the Runion complaint was filed, counsel for U.S. Shelter, realizing that the complaint was more amenable to settlement possibilities, contacted Mr. Runion's attorney, Mr. Ray D. Lathan, Esq. To the total shock and dismay of the plaintiff's counsel in the *Kitchens* case, Runion and U.S. Shelter agreed to settlement terms.

The terms of the tentative settlement agreement, subject to the court's approval, in essence gives Mr. Runion and the putative class a "put" whereby U.S. Shelter will buy back all stock offered to it for $5.50 a share. The "put" may be exercised at three different time periods. At the time of the hearing on June 7, 1983, the stock was selling at around $6.00 per share.

The first point the court will address is the motion to consolidate the two lawsuits. Plaintiffs in the *Kitchens* case move to consolidate pursuant to Rule 42 of the Federal Rules of Civil Procedure. The Rule provides:

(a) Consolidation. When actions involving a *common question of law or fact* are pending before the court, it may order a joint hearing or trial of any or all

the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. (emphasis added).

■ Both complaints center around a common question of fact—the filing of the Prospectus and Registration. Both complaints raise a common question of law—the representation in the Prospectus that the stock was valued at $5.50 a share was a misrepresentation. Although the *Kitchens* case raises many more issues than the *Runion* case, all the questions raised in the *Runion* case are also raised in the *Kitchens* case. The Prospectus did represent that U.S. Shelter stock would be worth $5.50 a share, and immediately following the exchange, it was not. Whether that representation will establish liability against U.S. Shelter will be a difficult, complex and time-consuming issue. In the interest of judicial economy, this court feels it should tackle that problem only once, and, therefore, the two cases are consolidated.

■ The plaintiffs in *Kitchens* further move to intervene in the *Runion* case for the purpose of challenging Mr. Runion's adequacy as the class representative. Under Rule 24(b) of the Federal Rules of Civil Procedure, "permissive intervention" is allowed "when an applicant's claim ... and the main action have a question of law or fact in common." This court has already found a common question of law *and* fact, and, therefore, the plaintiffs in the *Kitchens* case are permitted to intervene for the limited purpose of objecting to Mr. Runion as a class representative.

■ The initial inquiry in this court's determination to allow a suit to proceed as a class action is Rule 23(a) of the Federal Rules of Civil Procedure, which provides the prerequisites to a class action as follows:

One or more members of a class may sue or be sued as representative parties

---

**3.** An Amended Complaint was filed on April 25, 1983.

**4.** The court has been advised that the total number of limited partners that could become members of the class is 214.

on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The plaintiffs in the *Kitchens* case focus in on the requirement in Rule 23(a)(4), contending the *Runion* case should not proceed as a class action since Mr. Runion, who is the only class representative in that case, will not adequately protect the interest of the class. In determining whether Mr. Runion would be an adequate class representative, this court should look at two criteria—(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel. *Gonzales v. Cassidy,* 474 F.2d 67 (5th Cir.1973); *see also, Epstein v. Weiss,* 50 F.R.D. 387 (E.D.La.1970); *Herbst v. Able,* 47 F.R.D. 11 (S.D.N.Y.1969).

■ The first criteria—the representative must have common interests with the rest of the class—has been interpreted to mean that the class representative should not have any significant antagonistic or conflicting interests to the unnamed members of the class. *Sullivan v. Winn Dixie Greenville, Inc.,* 62 F.R.D. 370 (D.S.C.1974). The plaintiffs in the *Kitchens* case contend Runion's connections with the management of U.S. Shelter make his interest in this class action litigation antagonistic to the remaining members of the class. The only real difference between Mr. Runion and the *Kitchens'* plaintiffs is the method and strategy to proceed with this litigation. Their interest is common—they all want to receive the amount of money that was represented to them by the management of U.S. Shelter and they all want to protect their investments. The fact that one group is proceeding in a hostile and "war-like" manner and the other is proceeding in a compromising and "unwar-like" manner does not

make their ultimate interest antagonistic. Therefore, the first requirement is satisfied.

The second criteria requires that Mr. Runion vigorously prosecute the interests of the class through qualified counsel. After reviewing briefs of counsel, affidavits, and the depositions of Mr. Runion, Mr. Lathan, Judge Sidney Smith (counsel for U.S. Shelter), and Mr. Doucette (real estate appraiser), the court does not feel that Mr. Runion is the proper party to vigorously and zealously represent the interest of potentially 214 investors who could make up the class. This decision is based on Mr. Runion's relationship with U.S. Shelter and the type of investigation and prosecution this litigation may require.

■ It is well established that a class representative has much more at stake than simply his own well-being and own self-interest. The class representative must voluntarily accept a fiduciary obligation towards all the members of the putative class. *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1305 (4th Cir.1978). The United States Supreme Court, in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 549–50, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949), discussed the responsibilities of the class representative. The Court stated that

> [h]e sues, not for himself alone, but as representative of a class comprising all who are similarly situated. The interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity. And while the stockholders have chosen the corporate director or manager, they have no such election as to a plaintiff who steps forward to represent them. He is a self-chosen representative and a volunteer champion. The Federal Constitution does not oblige the state to place its litigating and adjudicating processes at the disposal of such a representative, at least without imposing standards of responsibility, liability and accountability which it considers will protect the interests he elects himself to represent. It is not without significance that this Court has found it necessary long ago in the Equity

Rules and now in the Federal Rules of Civil Procedure to impose procedural regulations of the class action not applicable to any other. We conclude that the state has plenary power over this type of litigation.

■ Mr. Runion's deposition clearly shows his close relationship with the management of U.S. Shelter. There are about a dozen incidents in the past few years that U.S. Shelter bestowed favors on Runion such as purchasing 9,000 shares of his stock at $5.50 a share when the stock was selling at around $4.00 to $4.50 a share so he could pay his income taxes. Only a couple of weeks after this lawsuit was filed, Mr. Runion contracted with U.S. Shelter to manage an apartment complex in Mauldin, S.C. Furthermore, Mr. Runion is very good friends with some members of the U.S. Shelter Board, and has expressed he would not like to sue them individually.

The close relationship alone would not disqualify Mr. Runion as class representative. The relationship, coupled with the complex nature of this litigation and Mr. Runion's lack of desire to fully investigate all aspects of this case, makes Mr. Runion inadequate as a representative. Mr. Runion has no desire to investigate possible fraud in the appraisal values of the apartment complex. He is not interested in the fact that many of the complexes were sold by U.S. Shelter shortly after the Exchange Offer for considerable profits. The court is not suggesting in any way that any fraud or wrong-doing took place in the appraisals or resales, but vigorous prosecution of this cause would require investigation into all those matters. Mr. Lathan, acting as Mr. Runion's attorney, did make a "whirlwind tour" of all the apartment complexes to make sure the appraisals were reasonable, but according to his deposition, the investigation of the appraisals took place after the basics of the settlement agreement between Mr. Runion and U.S. Shelter had been reached, and the parties were left with only the details to negotiate. That is simply not vigorous prosecution.

■ Under Rule 23(e) of the Federal Rules of Civil Procedure, the district court acts as a fiduciary who must serve as a guardian of the rights of the absent class members. *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975). Although no class has been certified, this court accepts its fiduciary responsibilities at this stage of the litigation. Absent class members have substantial due process rights that are being affected in this case even though a class has not been certified. In *Shelton v. Pargo, Inc.,* 582 F.2d 1298 (4th Cir.1978), the court recognized the need of the district court to protect the rights of absent class members even at the precertification stage of the litigation. The court stated that

> the District Court should have both the power and the duty, in view of its supervisory power over and its special responsibility in actions brought as class actions, as set forth in 23(d), to see that the representative party does nothing, whether by way of settlement of his individual claim or otherwise, in derogation of the fiduciary responsibility he has assumed, which will prejudice unfairly the members of the class he seeks to represent. Apart, then, from the question whether 23(e) provides authority for judicial control over settlements and compromises by representative parties or not, the District Court would appear to have an ample arsenal to checkmate any abuse of the class action procedure, if unreasonable prejudice to absentee class members would result, irrespective of the time when the abuse arises.

*Id.* at 1306. In exercising its fiduciary duties, this court cannot allow Mr. Runion to proceed as a class representative. Therefore, it is

ORDERED, that *Kitchens, et al. v. U.S. Shelter, et al.* and *Runion v. U.S. Shelter,* be, and the same are hereby consolidated. It is

ORDERED FURTHER, that Mr. C.E. Runion may not proceed as a class representative.

AND IT IS SO ORDERED.