Sharyn **JENKINS**; Wilhemenia Dorsey; Sandra L. Smith; Jacqueline E. Iaquinta; and Susan Timmerman Fagans Tepel Daugherty, for Themselves and, as Next Friends, for Their Minor Children, and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

Ruth W. **MASSINGA**, in her Official Capacity as Secretary of the Maryland Department of Human Resources; Ann C. Helton, in her Official Capacity as Executive Director of the Maryland Child Enforcement Administration; Prince George's County, Maryland; Robert W. McCarthy, Jr., in his Official Capacity as Administrator of the Seventh Judicial Circuit of Maryland; and the Circuit Court For Prince George's County, in its Administrative Capacity, Defendants.

Civ. A. No. M–83–4134.

United States District Court, D. Maryland.

Aug. 3, 1984.

Katherine P. Ransel, Nancy C. Crisman, Center for Law in the Public Interest, Washington, D.C., C. Christopher Brown, Baltimore, Md., and Donna Lenhoff, Women's Legal Defense Fund, Washington, D.C., for plaintiffs.

Stephen H. Sachs, Atty. Gen., Md., Dennis M. Sweeney, James G. Klair and Joseph B. Spillman, Asst. Attys. Gen., Baltimore, Md., for defendants Ruth W. Massinga, Ann C. Helton, Robert W. McCarthy, Jr., and the Circuit Court for Prince George's County.

Thomas P. Smith, County Atty., Michael O. Connaughton and Carl A. Harris, Deputy County Attys., and Robert H. Drummer, Associate County Atty., Upper Marlboro, Md., for defendant Prince George's County, Md.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

Four plaintiffs, Jenkins, Dorsey, Smith and Iaquinta, on behalf of themselves, their children, and all others similarly situated, filed a class action in this court on December 2, 1983, alleging that the defendants, Ruth W. Massinga, Secretary of the Maryland Department of Human Resources; Ann C. Helton, Executive Director of the Maryland Child Support Enforcement Administration [State defendants]; Prince George's County; Robert W. McCarthy, Administrator of the Seventh Judicial Circuit; and the Circuit Court for Prince George's County [County defendants], imposed a 5% surcharge on their child support payments which, they assert, violated state and federal statutory law as well as the United States Constitution (Paper No. 1).

On March 2, 1984, the plaintiffs amended their complaint to add a class representative, Susan Daugherty, as next friend for her children, alleging against the State defendants only that the Baltimore City Bu-

reau of the Maryland Child Support Enforcement Administration imposed an illegal 3% surcharge on her child support payments (Paper No. 20).

All parties have filed motions for summary judgment[1] (Paper No. 18, Plaintiffs' Summary Judgment; Paper No. 22, County defendants' Summary Judgment; Paper No. 23, State defendants' Summary Judgment). In addition, a motion to certify "Class A," the Prince George's County Class, is before this court (Paper No. 17). That motion is opposed by all defendants (Paper No. 23, State opposition; Paper No. 24, County opposition). No hearing is necessary to decide the issues before this court (Local Rule 6E).

## I. Overview of Federal and State Child Support Programs

In 1975, Congress amended the Social Security Act by adding Title IV–D, now codified at 42 U.S.C. §§ 651–655, which established a federal and state cooperative program "[f]or the purpose of enforcing the support obligations owed by absent parents to their children ... locating absent parents, establishing paternity, and obtaining child and spousal support...." 42 U.S.C. § 651.

The Act requires each state to adopt a state plan which must "be in effect in all political subdivisions of the state." 42 U.S.C. § 654(1). Under the plan, a state may enter into written agreements for cooperative arrangements with local courts and law enforcement officials to assist the state IV–D agency in carrying out the child support enforcement program. 42 U.S.C. § 654(7).

In order to meet the requirements of the Act, the state must establish a Title IV–D agency which "[a]dministers the plan uniformly throughout the state, or supervises the administration of the plan by its political subdivisions." 45 C.F.R. § 305.21(a). The Maryland General Assembly in 1976 responded to Title IV–D by creating the Child Support Enforcement Administration in the Department of Human Resources. Md. Code Ann., Art. 88A § 59 (1983 Cum. Supp.). The Bureau of Support Enforcement thus became the public agency responsible for support collection in all civil cases in which payments were ordered to be made through the agency. Md. Code Ann., Art. 88A, § 59(b)(5).

Like the federal law, the Maryland statute authorizes cooperative agreements with circuit courts and law enforcement officials as well as public and private agencies to operate support enforcement units. Md. Code Ann., Art. 88A, § 59(b)(4). At the present time, five Maryland subdivisions, of which Prince George's County is one, administer their own support collection units (see Paper No. 23 at 3).

Under federal regulations, "[i]f the IV–D agency [the Bureau of Support Enforcement] delegates any of the functions of the IV–D program to any other state or local agency or official ... the IV–D agency shall have the responsibility for securing compliance with the requirements of the state plan by such agency or official." 45 C.F.R. § 302.12(3).

Congress has provided that services established under the state plan must be made available to any individual upon application by that individual. 42 U.S.C. § 654(6). A reasonable application fee may be charged, 42 U.S.C. § 654(6)(B), and costs in excess of the fee may be collected from the parent who owes the support or from the individual receiving the IV–D services. 42 U.S.C. § 654(6)(C). If the state opts to impose a fee for services on the recipients of the service, it may do so "only if such

---

**1.** All defendants also have filed motions to dismiss (Paper No. 4, State Defendants; Paper Nos. 5 & 15, P.G. County; Paper No. 13, P.G. Circuit Court). Because the issue of mootness, alleged first in all motions to dismiss, has been realleged in the motions for summary judgment, this court will decide that issue, as well as the others set forth in the defendants' summary judgment motions, using the standard for summary judgment set forth in Fed.R.Civ.P. 56.

The plaintiffs have responded to the defendants' motions for summary judgment (Paper Nos. 25, 27 and 30). The State defendants have responded to the plaintiffs' motion for summary judgment (Paper No. 29).

state has in effect a procedure whereby all persons in such state having authority to order child or spousal support are informed that such costs are to be collected from the individual to whom such services were made available." 42 U.S.C. § 654(6)(C)(ii).

When the Maryland General Assembly enacted the legislation to implement IV–D, *Md. Code Ann.*, Art. 88A § 59, it provided that:

"(iii) When the responsibility for collection and/or support enforcement is exercised by a local agency or circuit court:

(A). The funds necessary to finance collection and/or support enforcement shall be derived from local and, to the extent available, federal resources.

(B) Any surcharge assessed *against the person required to make support payments* in order to defray the cost of collection may be retained by the local government."

*Md. Code Ann.*, Art. 88A § 59(b)(5)(iii). (Emphasis added).

The Maryland Plan, however, as adopted provides that no application fee is to be charged for services and that excess costs for provision of support services are not recovered either from the parent who owes support or from the individual receiving services (Paper No. 18, Ex. 4, State Plan § 2.5). That plan, which "is in effect in all political subdivisions of the State" (Paper No. 18, Ex. 3, State Plan § 1.2) governs both the state administered and the locally administered support enforcement units. *See* 45 C.F.R. § 305.21.

## II. *Factual Background*

### A. *Prince George's County Plaintiffs*

On February 23, 1983, the Circuit Court of Prince George's County and the Prince George's County Government imposed a 5% fee for collection, disbursement, and other services performed by the County Support Collection Unit (Paper No. 18, Ex. 2, Administrative Order of the Court). That surcharge took effect in July 1, 1983, and was collected from the recipients of the child support payments.

Each of these plaintiffs is a non-AFDC recipient whose children receive support payments from the absent parent through the Prince George's County Support Enforcement Unit. Five percent was deducted from each child support payment before the money was disbursed to the plaintiffs. (*See* Letters attached to Paper No. 11).

On December 1, 1983, the Attorney General of Maryland issued an opinion advising that the 5% fee violated federal and state law (Paper No. 20, Ex. 6). Shortly thereafter, on December 19, 1983, the County defendants rescinded the order imposing the fee and stopped collecting the surcharge. Later in the month, Mr. McCarthy, the Administrator for the Seventh Judicial Circuit, outlined a plan to James Klair, Assistant Attorney General, to refund the fees collected with 10% interest per annum (Paper No. 20, Ex. 8).

Prince George's County implemented the refund plan on January 20, 1984, mailing a total of 5,630 refund checks representing $211,878.39 in fees collected (Paper No. 29, Ex. B affidavit of McCarthy, ¶ 2). Mr. McCarthy has averred that, as of March 20, 1984, 53 checks representing refunds of $720.59 remain undeliverable, but that efforts to locate the recipients will continue [2] (Paper No. 29, Ex. B, ¶¶ 5 & 6).

### B. *Baltimore City Plaintiff*

The Bureau of Support Enforcement in Baltimore City [3] began in 1970 to charge a fee of approximately 3% to offset the cost

---

**2.** The plaintiffs question the accuracy of the refund mailing. Between July 1, 1983 and November 2, 1983, 7,804 non-AFDC cases were handled by the County Support Enforcement Collection Unit (Paper No. 18, Ex. B). They speculate that the 2,174 discrepancy between the number of cases, and the 5,630 refunds mailed could be related to non-payment of support by obligated parents.

**3.** On January 1, 1979, the responsibility for child support collection and enforcement was transferred from the State Division of Parole and Probation to the Child Support Enforcement Administration. *See Md. Code Ann.*, Art. 88A § 59(b)(5).

of collecting and distributing support checks in cases in which the absent parent paid the support through the agency. The plaintiff Daugherty has received payments through that agency since 1976 (Paper No. 18, Ex. 11, affidavit of Daugherty ¶ 2) from which a 3% fee has been deducted (Paper No. 18, Ex. 11, attachment B & C).

On March 1, 1984, on the advice of counsel the Executive Director of the Maryland Child Support Enforcement Administration, Ann Helton, directed the Baltimore City Bureau of Support Enforcement to cease collecting the 3% fee (Paper No. 23, Ex. 5 & attachment). None of the fees collected has been refunded to the participants.

## III. *Legal Analysis*

The plaintiffs seek a declaratory judgment that the State and County defendants have violated and are violating:

1) federal law [4] by their refusal to ensure that the State Plan is in effect and administered uniformly in all political subdivisions of the state [5] (Paper No. 1, Count I).

2) federal law [6] by (1) their refusal to have in effect a procedure by which the plaintiffs' support awards could be increased so that the income of the children would not be reduced and by (2) their disregard for the actual cost of services provided to recipients (Paper No. 1, Count III).

3) the Fourteenth Amendment's Equal Protection Clause by imposing a cost assessment upon the plaintiffs, as distinguished from other similarly situated persons in other political subdivisions of the state (Paper No. 1, Count II).

4) the Fourteenth Amendment's Due Process Clause by imposing a fee upon, and deducting it from, support payments without providing adequate notice or an opportunity to be heard and without regard to the actual cost of the services provided [7] (Paper No. 1, Counts IV & V).

5) state law [8] by financing the collection of support awards from the recipients of support payments (Counts VI & VII).

To summarize, the plaintiffs and the putative classes they seek to represent seek a declaratory judgment that (1) the assessment of fees violates federal law; and (2) the non-uniform administration of the Maryland Title IV–D program violates federal law. They also seek injunctive relief to (1) preclude the defendants from assessing such fees; (2) to require the state to return all fees assessed with interest; and (3) to compel the state to administer its Title IV–D plan uniformly.

---

**4.** 42 U.S.C. § 654(1) which requires that a Title IV–D State Plan be in effect in all political subdivisions; 45 C.F.R. § 301.10 requiring that the State Plan be administered in conformity with Title IV–D regulations; 45 C.F.R. § 302.-12(2) requiring the State, if it delegates IV–D functions to a local agency, to secure compliance with the requirements of the State Plan; and 45 C.F.R. § 305.21 requiring the State Title IV–D agency to administer the State Plan uniformly throughout the state or to supervise the administration of the Plan by its political subdivisions.

**5.** The federal law and regulations, which are alleged in Count I to have been violated, place the responsibility for uniform administration and/or supervision on the state. (*See supra* n. 4). The County defendants have neither the power nor the responsibility to ensure uniform operation of the program. No cause of action under federal law has been stated against them as to Count I. Therefore, the County defendants will be dismissed as to Count I.

**6.** 42 U.S.C. 654(6) which requires the state, if it chooses to impose a fee for services against the recipients of the service, to effect a procedure to inform all persons with power to impose a fee that the costs are to be collected from the recipient.

**7.** The plaintiffs have not sought summary judgment on the two Fourteenth Amendment claims. They posit that because statutory grounds exist for finding that the defendants' actions are illegal, the constitutional issues can be avoided. This court, therefore, will not address the constitutional claims set forth in Counts II, IV, and V.

**8.** *Md.Code Ann.,* Art. 88A § 59(b)(5)(iii) which allows local agencies to retain in their treasuries fees collected from the parent required to make support payments.

Because of the limitations on the court's power to adjudicate only live cases and controversies, each claim for relief will be analyzed to determine whether that claim is moot, and, if so, whether class certification is nevertheless appropriate. The claims to be addressed fall into two distinct categories. The first category circumscribes the plaintiffs' request for declaratory and injunctive relief for the uniform administration of the state's Title IV–D program. The second category includes the plaintiffs' requests for declaratory and injunctive relief related to the imposition of the fees.

A. *Declaratory Judgment and Injunctive Relief on Issue of Administration of Title IV–D/Program*

■ All plaintiffs allege violations of federal law which, the plaintiffs argue, requires the uniform administration of the child support enforcement program in all political subdivisions of the state. It appears to this court that a controversy exists as to this issue between the plaintiffs and the State defendants.

It is uncontroverted that in Prince George's County, which contracts with the state to conduct the support enforcement unit, a fee no longer is assessed against either the recipient of the service or the obligated parent. Baltimore City's support enforcement unit, administered directly by the State, likewise no longer collects fees.

The defendants admit, however, that Cecil County, Maryland assesses a 5% fee against the parents of non-AFDC recipients who are obligated to make support payments through its support collection unit. If, however, the obligated parent does not pay the 5% fee in addition to the amount of the support order, Cecil County deducts up to 5% from the children's support payment (Paper No. 25, Exs. A & B, Request for Admission # 24). In addition, the defendants admit that Montgomery County assesses a 3% fee of up to $1.50 against the obligated parent (Paper No. 25, Exs. A & B, Request for Admission # 25) and that Anne Arundel County assesses a 2% fee

against the obligated parent (Paper No. 25, Exs. A & B, Request for Admissions # 26).

The plaintiffs, on July 10, 1984, submitted further information to this court regarding the fee collection practice in Baltimore County. The Baltimore County Division of Support and Custody, which is under contract with the state to provide Title IV–D services, (Paper No. 30, Declaration of Ransel, ¶ 6) charges a 2% fee against the obligated parent (Paper No. 30, Declaration of MacDonald, ¶ 7, and attachment E). Apparently, if the obligated parent does not pay the fee, it is deducted from the support payment before forwarding it to the child recipient (Paper No. 30, Declaration of MacDonald, ¶ 8 and attachment D).

The defendants deny that the State Plan is not administered uniformly throughout the State (Paper No. 25, Exs. A & B, Request for Admissions # 14). Thus, a live controversy exists on this issue.

B. *Class Certification and the Uniform Administration Issue*

■ Fed.R.Civ.P. 23 was designed to provide an efficient mechanism to bring before the court the claims of numerous similarly situated plaintiffs through a limited number of class representatives. In the instant action, the plaintiff representatives have moved for class certification only for the class they name "Class A." That class, as defined by the plaintiffs, consists of class representatives Jenkins, Smith, Dorsey and Iaquinta, and of all custodians of children and the children themselves who do not receive payments from the Aid to Families of Dependent Children [AFDC] program and who received support payments through Prince George's County Collection Unit from July 1, 1983 until the time the defendants ceased taking 5% of their support payments (Paper No. 17).

It is the opinion of this court that these class representatives may represent the interests of a larger class in regard to the uniform administration issue. An amendment to the amended complaint has been requested (Paper No. 31), however, to add

Brian M. Sands as an individual plaintiff. Mr. Sands is receiving non-AFDC child support through Baltimore County and is charged a fee. If the amendment is granted, the named plaintiffs will represent persons who are charged a fee and those who are not. Any problems of typicality, commonality or adequacy of representation which might otherwise exist will be cured by that amendment. The amendment will be granted.

■ In the interest of fairness and efficiency, this court will exercise its power under Fed.R.Civ.P. 23 to define the appropriate class. *See Council of the Blind v. Regan,* 709 F.2d 1521, 1543 n. 44 (D.C.Cir. 1983) (federal courts possess ample powers to redefine the class); *Penk v. Oregon State Board of Higher Education,* 93 F.R.D. 45, 48 (D.Or.1981) ("If the court determines that the action may be maintained by a class, the court may undertake the task of defining the class."); *Taliaferro v. State Council of Higher Education,* 372 F.Supp. 1378, 1388 (E.D.Va.1974); *see also* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1760 at 562–63 (1972).

As the plaintiffs point out, five political subdivisions have made cooperative arrangements with the state to administer their own support enforcement units. The plaintiffs have indicated to this court that they will seek by amendment to add, if necessary, a plaintiff class representative from each of those subdivisions (*see* Paper No. 30 at 7). With the addition of plaintiff Sands, such an amendment does not appear necessary on this issue.

This court will construe the class to include all non-AFDC custodians and their children who receive services from support collection units which, through cooperative agreements with the state, provide such services. Prince George's County, Baltimore County, and three other local governments provide such services by cooperative agreement. The class representatives, notwithstanding the fact that they all reside in either Prince George's County or Baltimore County, appear to this court to be adequate

representatives for the unknown class members who receive services through other local agencies which cooperate with the state to provide services. The Prince George's County and Baltimore County plaintiffs share with other members of the class a common and typical claim.

### 1. *Commonality*

Fed.R.Civ.P. 23 requires the class representatives' claims to contain questions of law or fact common to the class. Fed.R. Civ.P. 23(a)(2). A common question of law exists herein—whether the state has violated federal law in supervising the operation of locally administered support collection units. The class representatives, as recipients of services from a locally administered program, stand in the same position as the unnamed class members in pressing this legal issue.

### 2. *Typicality*

A second prerequisite to class certification is that the claims of the named class representatives be typical of the claims of the class. Fed.R.Civ.P. 23(a)(2). On the issue of uniform administration of the state Title IV–D program, there is a "basic congruence between the claims and interests of the named plaintiff[s] with those of the class...." *Mobley v. Acme Markets, Inc.,* 473 F.Supp. 851, 858 (D.Md.1979). If the class representatives prevail on this issue, their success will benefit all members of the class they seek to represent in requiring the fee practices to be uniform. The class representatives thus meet the typicality requirement.

### 3. *Adequacy of Representation*

This court can find no antagonism or conflict between the class representatives' position on this issue and the position of the class members. The plaintiff representatives share the same interest as the class—to ensure that the defendants' alleged illegal practices cease and not recur. Their vigor and sincerity cannot be questioned. *See, e.g., Linder v. Litton,* 81 F.R.D. 14, 22 (D.Md.1978). In addition, the

adequacy of counsel requirement, *see* Fed. R.Civ.P. 23(a)(4), is met (Paper No. 17, Declaration of Ransel, Lead Counsel, Ex. 3, outlining counsel's experience in class actions).

### 4. *Numerosity*

Fed.R.Civ.P. 23(a) contains a numerosity requirement which clearly is met in this action. In Prince George's County alone, there are approximately 15,000 class members (*see* Paper No. 17 at 3, and Ex. 1).

Thus, for all the reasons stated, a class, represented by plaintiffs Jenkins, Dorsey, Smith, Iaquinta, and Sands is certified to press the claim of non-uniform supervision of locally operated child support enforcement units for the members of the class which includes all custodians of children and the children themselves who do not receive AFDC assistance and who receive support payments through support enforcement units which contract with the state to administer and operate those programs. That class will be denominated Class A.

A second class exists, Class B, which plaintiff Daugherty seeks to represent.[9] Class B, as defined by the plaintiffs, consists of all custodians of children and the children themselves who receive their support payments through Baltimore City Bureau of Maryland Support Administration (Paper No. 20, Amended Complaint ¶ 20(b)). As pointed out previously, the State directly administers the Baltimore City support enforcement unit. It also directly administers all but five of the support enforcement units in place in Maryland.

■ Although the plaintiffs have not yet moved for certification of the class they name "Class B," this court will exercise the powers afforded it pursuant to Fed.R. Civ.P. 23 to make *sua sponte* a determination of the scope of that putative class. *See McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir.1981); *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 274 (10th Cir.1977); *Senter v. General Motors Corp.*, 532 F.2d 511, 520 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). *See also*

---

**9.** The State defendants assert that Ms. Daugherty lacks standing to raise the claim of lack of uniform administration of the State Plan and to seek an injunction for the refunding of fees collected by the Baltimore City support enforcement unit.

The defendants aver that their records do not disclose an application from Ms. Daugherty for Title IV–D services provided through the support enforcement unit (Paper No. 23, Ex. 13, Affidavit of Laufert). Pursuant to 42 U.S.C. § 654(6) "child support collection services ... shall be made available to any individual ... upon application filed by such individual with the State...." 42 U.S.C. § 654(6)(A). Thus, the defendants conclude that, because they have no record of Ms. Daugherty's application, she never applied for such services, is not entitled to such services and therefore lacks standing to raise issues concerning the State defendants' alleged violation of Title IV–D.

It is an undisputed fact that Ms. Daugherty has been receiving Title IV–D services through the Baltimore City support enforcement unit since March 10, 1976. On that date, the Circuit Court for Baltimore City ordered that Ms. Daugherty's divorce decree be modified to require that child support payments for her minor children be paid by their father through the support enforcement unit (Paper No. 18, Ex. 11, Affidavit of Daugherty and attachment thereto, Court Order). Eight years have passed since the

time of that court order. During three of those years the Parole and Probation Department collected and distributed Ms. Daugherty's child support checks. In 1979, the Department of Human Resources assumed that responsibility.

Even assuming that Ms. Daugherty did not apply officially for Title IV–D services, she has been receiving those services for 8 years. As the plaintiff points out it is possible that after 8 years Ms. Daugherty's application could have been lost or misplaced in the transfer from Parole and Probation's administration of the program to the Department of Human Resources' administration. The defendants' technical and restrictive reading of the statute will not be adopted by this court to defeat Ms. Daugherty's standing to raise claims against the State defendants.

The defendants rely on *New Jersey v. Department of Health and Human Services*, 670 F.2d 1262 (3rd Cir.1981), to support their position that Ms. Daugherty lacks standing. In that case the court held that the Department of Health and Human Services acted reasonably in requiring applications from non-AFDC recipients of Title IV–D services in order to calculate the federal reimbursement due the State of New Jersey for operating a child support enforcement program. *Id.* at 1278–79. The holding and the reasoning in that case are not applicable here on the standing issue.

3B, J. Moore, *Federal Practice*, ¶ 23.50 at 23–420–21 (2nd ed. 1982) ("the court may make its determination on its own motion. . . .") and cases cited therein.

This court construes Class B to consist of all non-AFDC custodians of children and their children who receive child support enforcement unit services in programs administered directly by the State. Plaintiff Daugherty is a member of that class, having received services from the Baltimore City unit since 1976.

For the same reasons as stated for certification of Class A, Class B will also be certified to press the claim for uniform administration of the State's Title IV–D program.[10]

Not only do the representatives of Class A and Class B, as those classes have been redefined by the court, meet the requirements of Fed.R.Civ.P. 23(a), but the classes themselves meet the requirement of Fed.R.Civ.P. 23(b). The parties opposing class certification (the State defendants) by their non-uniform fee collection practices have acted in a manner generally applicable to the class. The class representatives' request for injunctive and declaratory relief, if granted, would provide relief appropriate to the whole class. Fed.R.Civ.P. 23(b)(2).

Class A and Class B, therefore, will be certified to press the issue of the State's alleged non-uniform supervision and administration of the Title IV–D State Plan.

### C. *Merits of Claim on Uniform Administration Issue*

█ As set forth in Part I of this Memorandum and Order, Title IV–D of the Social Security Act requires each state to adopt a State Plan which is to be in effect in all political subdivisions. 42 U.S.C. § 654(1). The state must establish a Title IV–D agency to administer the plan uniformly throughout the state or to supervise the administration of the plan by its political subdivision. 45 C.F.R. § 305.21(a). That agency is responsible for securing compli-

ance with the requirements of the plan by these political subdivisions. 45 C.F.R. § 302.12(3).

Although the defendants assert that the Maryland State Plan is in effect in all political subdivisions of the state and that it is administered uniformly throughout the state (Paper No. 25, Exs. A & B, Request for Admission # 14 and Response # 14), such an assertion is belied by the undisputed facts in this case.

At the present time, Prince George's County and Baltimore City support enforcement units do not collect fees for the provision of services, but Cecil County, Montgomery County, Baltimore County and Anne Arundel County support enforcement units continue to collect such fees (Paper No. 25, Exs. A & B, Request for Admissions 24, 25 & 26). Two of those counties, Montgomery and Anne Arundel, assess the fee against the parent obligated to pay, but Cecil County deducts the fee from the child support payment if the obligated parent does not pay the fee. *Id.* A similar practice exists in Baltimore County (Paper No. 30).

Such a patchwork of fee collection practices clearly violates 45 C.F.R. § 305.21(a) which requires uniform administration of the State Plan. It also violates 42 U.S.C. § 654(6)(C)(ii) which allows the state the option of collecting fees from the individual to whom services are provided "only if the state has in effect a procedure whereby all persons in such state having authority to order child or spousal support are informed that such costs are to be collected from the individual to whom such services were made available." 42 U.S.C. § 654(6)(C)(ii). It is obvious that no such procedure is in effect in Maryland. The defendants have violated the Act.

### D. *Claims Related to the Legality of the Fee Collection Practice*

Class A and Class B representatives, as those classes were originally defined by the plaintiffs (hereinafter referred to as "Class

---

**10.** Class B meets the numerosity requirement of Fed.R.Civ.P. 23(a)(4). It consists of over 66,000

plaintiffs in Baltimore City alone (Paper No. 20, Amended Complaint ¶ 20(c)).

A–1 and Class B–1"), seek a declaratory judgment that the specific fee collection practices in force in those local jurisdictions in which fees were collected be declared violative of federal law and that an injunction be entered to return all fees plus interest collected from them. As to both sets of class representatives, the State and County defendants assert that those claims for relief are moot.

They argue that because the collection of a 5% fee in Prince George's County ceased on December 19, 1983, and because the County defendants have refunded, to the extent possible, all monies collected plus 10% interest to the plaintiffs and the class they seek to represent, no live controversy exists between the putative class representatives and the defendants.

Similarly, the State defendants assert that plaintiff Daugherty's claim for relief on these issues is mooted by the fact that all fee collection ended in Baltimore City on March 1, 1984. Although no funds have been returned to Baltimore City recipients of support enforcement services, the state argues that the plaintiffs' claim for a refund is barred by the Eleventh Amendment. Thus, as to the Class B–1 representative, the state asserts that she can state no claim against them.

■ When issues are no longer "live" between the parties or when the parties lack a legally cognizable interest in the outcome of the litigation, the case is moot, *see United States Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980); *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1966). Absent a case or controversy, this court has no power to decide the issue. *See, e.g., DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S.Ct. 1704, 1705, 40 L.Ed.2d 164 (1974).

■ In the instant action, the defendants have voluntarily ceased the challenged practice of deducting a 5% fee from Prince George's County recipients and the 3% fee from Baltimore City recipients. "When the specific relief sought by a plaintiff comes about by the defendants' voluntary cessation of challenged conduct, even when accompanied by assurances of future good conduct, this will not moot the controversy unless the defendant meets a heavy burden to show that its change of heart is permanent and that defendant will not return to its old ways." Newburg, *Class Actions*, § 1088 at 149 (1977) citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

■ The defendants have not met the burden to show that, at least as to the fee collection in Prince George's County and Baltimore City, the change is permanent. While the Attorney General has issued an opinion stating that there is no authority under state or federal law for such action (Paper No. 18, Ex. 6) and the defendants have changed their present practices in light of that opinion (Paper No. 18, Ex. 9), the fact that fees are still being charged in some local jurisdictions makes the permanence of the present practices in Prince George's County and Baltimore City suspect. While the class representatives' request for an injunction to stop such fee collection is moot, an injunction to prevent its reoccurrence in the future is not.

The defendants, in effect, have admitted the illegality of that practice in Prince George's County and Baltimore City. "For a declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'" *Ashcroft v. Mattis*, 431 U.S. 171, 172, 97 S.Ct. 1739, 1740, 52 L.Ed.2d 219 (1977) (per curiam). Such a present right exists as to Classes A–1 and B–1.

### 1. *Class A–1 Considerations*

Although this court entertains little doubt that the named Class A–1 representatives could fairly and adequately represent a class of all recipients of support in Maryland from locally administered programs to which Title IV–D applies, to assure such a result this court will entertain a motion for leave to substitute one or

more named plaintiffs, *see Rogers v. Paul,* 382 U.S. 198, 199, 86 S.Ct. 358, 359, 15 L.Ed.2d 265 (1965); *Vaughns v. Board of Education,* 574 F.Supp. 1280, 1285 (D.Md. 1983), to press on behalf of a new class the issue of the legality of the fee collection practices in one or more of the four locally administered programs and to seek injunctive relief to stop those specific practices and to obtain a refund of the monies collected. Any ruling as to those issues will be held in abeyance pending such substitution and the filing of relevant motions.

One final issue remains as to the currently named representatives of Class A–1. In effect they represent a putative subclass within Class A—that is, non-AFDC custodians and their children from whom a 5% fee was deducted but ultimately refunded. Although their claim for injunctive relief to stop the fee practice in Prince George's County is moot, they raise certain concerns to this court regarding the refund process.

For example, the plaintiffs challenge the defendants' unilateral decision to use a "class factored" interest rate, which was arrived at by averaging the amount taken over time from the class (Paper No. 18, n. 13 and Ex. 8). As a result, plaintiffs allege that some class members have not received 10% per annum interest on their refund. In addition, the plaintiffs assert that the 10% interest is not a fair return suggesting the use of the average prime rate over the last three quarters (Paper No. 18, n. 13).

Further the plaintiffs attack the system set up by Prince George's County to refund the money asserting that no dispute resolution mechanism is in place and that no public notice was given of the intent to refund so that possible unidentified members of the class could make their entitlement to a refund known.

Finally, the plaintiffs point to a discrepancy between the number of checks mailed

(5,630) and the number of non-AFDC cases handled (7,804) by the Prince George's County unit between July 1, 1983 and November, 1983 (Paper No. 25 at 2; Paper No. 18, Ex. 13) and question whether all members of the class have received refunds.[11]

While this court commends the refund decision and notes the alacrity with which the refunds were made to the putative subclass, it is cognizant of its responsibility under Fed.R.Civ.P. 23(e), which requires that no class action be dismissed or compromised without the approval of the court and the giving of notice of the proposed dismissal or compromise to all members of the class.

 Despite the fact that no class was certified at the time the defendants refunded the collected monies and in effect "settled" the claims of the putative subclass A–1 on the issues, "[t]he settled rule appears to be that a suit brought as a class action under Rule 23 must be treated as a class action for the purposes of dismissal or compromise from the time the action is filed until the question of class certification is determined." Annot., 68 ALR Fed. 290, 298 (1984) citing *Shelton v. Pargo, Inc.,* 582 F.2d 1298 (4th Cir.1978), and numerous other cases. The obvious purpose of Rule 23(e) is to prevent collusion between plaintiffs and defendants in settling class actions to the detriment of the absent class members. *See Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 549–50, 69 S.Ct. 1221, 1227–28, 93 L.Ed. 1528 (1949); *Shelton v. Pargo, Inc.,* 582 F.2d at 1305–06. Of course, no collusion is present here. The plaintiffs were not consulted as to the refund policy. But, therein lies the problem.

 This court is given the ultimate responsibility in an action begun as a class action to be "the guardian of the rights of

---

**11.** Another problem, continued fee collection from the putative subclass members after rescission of the fee practice, (Paper No. 18, Ex. 10, Langford Declaration ¶ 14), has been explained satisfactorily to the court. In the case of Jenice Langford, the late fee charge was refunded on January 5, 1984 (Paper No. 22, affidavit of

McCarthy, ¶¶ 5–6). Similarly, the plaintiffs' allegations that no system to locate class members whose checks were undeliverable was in place also has been answered satisfactorily (*see* Paper No. 29, affidavit of McCarthy ¶¶ 4–6). Such a system is in place.

the absentees [and thus] is vested [with] broad administrative, as well as adjudicative power." *Shelton v. Pargo,* 582 F.2d at 1306 n. 20 citing *Greenfield v. Villager Industries, Inc.,* 483 F.2d 824, 832 (3rd Cir.1973); *see also Runion v. U.S. Shelter,* 98 F.R.D. 313, 318 (D.S.C.1983). If the defendants had proposed the refund policy as a possible settlement on the claims of this putative subclass, this court would have been obligated to determine whether that proposed settlement was fair and adequate. *See, e.g., Flinn v. FMC Corp.,* 528 F.2d 1169, 1173–74 (4th Cir.1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976); *In re Montgomery County Real Estate Antitrust Litigation,* 83 F.R.D. 305, 315–16 (D.Md.1979). In addition, this court would have considered the strength of the opposition to the settlement from the class members. *Flinn v. FMC Corp.,* 528 F.2d at 1173; *In re Montgomery County,* 83 F.R.D. at 317.

■ This court is convinced that the defendants' unilateral decision to refund the collected money which in effect was a settlement of certain of the claims of the putative subclass conducted without the approval of this court, does not abrogate this court's responsibility or diminish its power to supervise administratively the dismissal or compromise of a class action, however it is effected. Referring to Rule 23, the Fourth Circuit has stated that a district court has "an ample arsenal to checkmate any abuse of the class action procedure, if unreasonable prejudice to absentee class members would result, irrespective of the time when the abuse arises." *Shelton v. Pargo, Inc.,* 582 F.2d at 1306.

Using that supervisory power, this court will turn to the issues raised by the named plaintiffs regarding the refund process. As to the "class factored" interest rate, this court finds that such a procedure was fair to all putative subclass members. It provided an efficient method of calculation which likely led to an expeditious mailing of the refund checks. If some class members did not receive the full 10% per annum on their refund, at least all class members received their refunds quickly, possibly as a result of the class factored interest calculation.

The court is further convinced that a 10% interest return is fair. That interest rate is commonly used to calculate interest due prevailing parties in lawsuits.

Of concern to this court is the discrepancy between the number of checks mailed (5,630) and the number of non-AFDC cases handled by the Prince George's County unit during the relevant time period (7,804). The defendants are ordered, therefore, to explain this discrepancy to the court.

Also of concern is the allegation that no dispute resolution mechanism is in place to ensure that each member of the subclass has received the correct refund. A review of the letter sent to parents along with their refund checks (Paper No. 18, Ex. 9) reveals that no mention was made of how to resolve disputes. In addition, no phone number is given anywhere in the letter or on the letterhead which might indicate whom to call if a problem existed. Therefore, the defendants are ordered to discuss with plaintiffs' counsel a means of presenting disputes regarding the refund checks and to submit a joint plan to this court for approval.

### 2. *Class B–1 Considerations*

Class B–1 stands in a slightly different position from Class A–1 regarding the relief requested. Although the fee collection has stopped in Baltimore City, it continues in other support collection programs administered directly by the state, specifically in Anne Arundel County, Cecil County and Montgomery County, based on the information provided to the court to date. Therefore, this court will entertain a motion to substitute one, or more named plaintiffs against whom fees are charged to press the issue of the legality of the fee collection practice and to seek an injunction on behalf of a new class of all those non-AFDC persons receiving support collection enforcement services from programs directly administered by the state.

One final issue remains as to Class B–1. The state asserts that the Eleventh Amendment bars the refunding of fees collected from Class B–1 members.

### E. *Eleventh Amendment Defense*

 Plaintiff Daugherty and the putative class she seeks to represent request that this court order the State defendants to refund the full amount of the fee deducted from their support awards with interest, for the period during which such fees were wrongfully withheld from the plaintiffs until the date of their return to the plaintiffs . (Paper No. 20 at 31, Prayer for Relief). The State defendants assert that such relief is barred by the Eleventh Amendment. "[A] suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979); *see also Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662, *reh den.*, 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974).

The defendants aver that the money collected in fees from the Baltimore City recipients was deposited into a general account maintained by the State Treasurer (Paper No. 29, Ex. A, Amended Answer to Interrogatory 3). Thus, unless the defendants have waived their immunity, an order directing the state to refund money deposited in that general revenue fund clearly would violate the Eleventh Amendment.

The plaintiffs assert that the State defendants waived their Eleventh Amendment defense when the state, through its alleged agent, Prince George's County, returned all the fees withheld from the Prince George's County plaintiffs.

 An *express* waiver of Eleventh Amendment immunity "may be found only where the state 'by the most express language or by such overwhelming implication from the [statutory] text [leaves] no room for any other reasonable construction.'" *Linkenhoker v. Weinberger*, 529 F.2d 51, 54 (4th Cir.1975) citing *Murray v. Wilson*

*Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). The plaintiffs have pointed to no statute by which Maryland has consented to suits such as the one brought herein. "In the absence of statutory authorization, neither counsel for the state nor any of its agencies may, 'either by affirmative action or by failure to plead the defense, waive the defense of governmental immunity.'" *Linkenhoker v. Weinberger*, 529 F.2d at 54 citing *Charles E. Brohawn & Bros. v. Board of Trustees*, 269 Md. 164, 166, 304 A.2d 819 (1973). Therefore, even assuming that Prince George's County was acting as an agent of Maryland in refunding the fees, such action by an agent does not abrogate its Eleventh Amendment immunity.

The plaintiffs also argue that the state's acquiescence to the refund combined with the Attorney General's opinion on the illegality of the fee collection indicates an implied waiver of the Eleventh Amendment defense. They look to *Moreno v. University of Maryland*, 645 F.2d 217 (4th Cir. 1981), *affirmed sub nom. Toll v. Moreno*, 458 U.S. 1, 102 S.Ct. 2977, 73 L.Ed.2d 563 (1982), in which the Court affirmed this court's order to the University of Maryland to refund tuition and fee differentials wrongfully withheld from the plaintiffs. *Id.* at 220.

That case stands in a different posture from the case at bar. In *Moreno*, the University obtained a stay of this court's order upon a promise to pay the refunds if its case failed on appeal. *Id.* The Court of Appeals found that a waiver of Eleventh Amendment immunity was the "price the University paid to stay the injunction." *Id.* See also *Vargas v. Trainor*, 508 F.2d 485, 492 (7th Cir.1974), *cert. denied*, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975) ("A representation made in a judicial proceeding for the purpose of inducing the court to act or refrain from acting satisfies the [waiver] requirements stated in *Edelman.*")

In the instant action the State defendants have made no like representations to

this court. The defendants have not waived the Eleventh Amendment defense, and it stands as a bar to repayment of fees deposited in the State's general treasury.[12]

Accordingly, it is this 3rd day of August, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That the plaintiffs' motion to amend to add Brian M. Sands as a named plaintiff to Class A is GRANTED.

2. That the plaintiffs' motion for class certification is GRANTED and the following classes be, and are hereby, CERTIFIED:

Class A, as redefined by this court herein, includes all non-AFDC custodians and their children who receive services from support collection units which, through cooperative agreements with the State, provide support collection enforcement services.

Class A–1, defined originally by plaintiffs as Class A, includes all non-AFDC custodians and their children who receive support collection enforcement services from Prince George's County.

Class B, as defined by the court herein, includes all non-AFDC custodians and their children who receive support collection enforcement services from programs administered directly by the State.

Class B–1, defined originally by plaintiffs as Class B, includes all non-AFDC custodians and their children who receive support collection enforcement services from the Baltimore City Bureau of Maryland Support Enforcement Administration.

3. That the motion of Classes A & B for summary judgment on the issue of uniform administration of the State's Title IV–D program is GRANTED as to the State defendants, but DENIED as to the County defendants.

4. That the State and County defendants are hereby enjoined from imposing fees for child support collection services in Prince George's County against the members of Class A–1.

5. That Class A–1 plaintiffs will be allowed to file a motion within twenty (20) days of this Order to substitute one or more named plaintiffs to press the claims of a new class to seek declaratory and injunctive relief regarding the fee collection practices in one or more of the four locally administered support collection units.

6. That the County defendants are ordered to provide to this court within twenty (20) days of the date of this order an explanation of the discrepancy between the number of refunds mailed to Class A–1 members and the number of Class A–1 members purportedly served during the relevant time period.

7. That the County and State defendants are ordered to meet with counsel for Class A–1 and to present to this court within forty-five (45) days of the date of this Order a plan for dispute resolution regarding the refund necessary for Class A–1.

12. "In certain circumstances, a Congress may require a state to waive immunity in order to be eligible for federal funds, but a state's receipt of the funds will constitute a waiver only if Congress explicitly required such a waiver [*Employees of the Dept. of Public Health & Welfare v. Missouri Dept. of Public Health & Welfare,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1983) ] or explicitly granted a right of action to individuals. [*Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ]" Nowak, Rotunda, Young, *Constitutional Law* 53 (1978). This court finds that Congress, in Title IV–D did not require such a waiver.

The "mere fact that a State participates in a program through which the federal government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in federal courts." *Edelman v. Jordan,* 415 U.S. at 673, 94 S.Ct. at 1361.

The Act at issue here, 42 U.S.C. § 651, *et seq.,* specifically abrogates federal sovereign immunity as to garnishment proceedings involving child support and alimony payments, *see Diaz v. Diaz,* 568 F.2d 1061, 1063 (4th Cir.1977); *Williams v. Williams,* 427 F.Supp. 557, 563–64 (D.Md.1976); 42 U.S.C. § 659(a). That waiver applies to a narrow class of cases, and is to be interpreted in a manner most favorable to the government. *See, e.g., Lamerand v. Lamerand,* 499 F.Supp. 1109, 1110 (D.Cal.1980).

After reviewing the Act, this court can find no other waiver of immunity.

8. That the State is hereby enjoined from imposing fees for child support collection services provided to the members of Class B–1 (Baltimore City).

9. That the Class B–1 plaintiffs will be allowed to file a motion within twenty (20) days of the date of this Order to substitute one or more named plaintiffs to seek declaratory and injunctive relief in the name of a new class of persons from whom fees are being collected in programs administered directly by the State.

10. That the request of the B–1 Class for injunctive relief to compel refunds of all fees collected by the State from that class is DENIED as barred by the Eleventh Amendment.