Naomi DIAZ, Appellant,

v.

Antonio B. DIAZ and United States and United States Civil Service Commission, Bureau of Retirement Insurance and Occupational Health, Appellees.

No. 76–1953.

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1977.

Decided Dec. 20, 1977.

William D. Levine, Huntington, W. Va. (Marshall & St. Clair, Huntington, W. Va., on brief), for appellant.

Ray L. Hampton, II, Asst. U.S. Atty., Huntington, W. Va. (John A. Field, III, U.S. Atty., Charleston, W. Va., on brief), for appellees.

Before BRYAN, Senior Circuit Judge, and CRAVEN,* and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

In 1975, Congress amended the Social Security Act, as set forth below, to subject to legal process, for enforcement of child support or alimony obligations, sums owed to an individual by the United States arising out of remuneration for employment:

"§ 659 Consent by the United States to garnishment and similar proceedings for enforcement of child support and alimony obligations.

"Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States . . . to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments." 42 U.S.C. § 659.

Alleging that she and their children had been deserted by her husband, Naomi Diaz brought suit in the district court, claiming that the quoted statutory provision creates a cause of action in the courts of the United States to subject her husband's federal retirement and disability benefits to payments for child support and alimony. Significantly, she has yet to obtain a State court decree entitling her to such payments. The district court dismissed the complaint for failure of Mrs. Diaz to obtain previously a judgment entitled to enforcement, and for lack of jurisdiction.

■ We express no opinion on the correctness of the rulings of the district court because we think it should have abstained.

Were we to accept Mrs. Diaz's construction of the amendment to the statute, it would require a federal court to determine what is essentially a matter of local domestic relations law, and it could not grant Mrs. Diaz the relief she requests without first determining whether, and to what extent, she is entitled to child support and alimony. Such a ruling would encounter the difficulty that it has been established for well over a century that such domestic relations matters are wholly inappropriate for resolution in a federal forum, involving as they do questions of singular significance to the administration of State affairs. See, e.g., *Barber v. Barber*, 62 U.S. 582, 584, 21 How. 582, 16 L.Ed. 226 (1859); *Sosna v. Iowa*, 419 U.S. 393, 404, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). We think that in these circumstances, which so clearly involve basic questions of West Virginia policy, it is appropriate for a federal court to abstain from the assertion of any jurisdiction it may have. See *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Fralin & Waldron, Inc. v. City of Martinsville*, 493 F.2d 481 (4th Cir. 1974).

■ Mrs. Diaz was apparently moved to institute this action in federal court by the belief that, because her husband could not be found within the State of West Virginia, apparently no longer residing there, the West Virginia court lacked personal jurisdiction to subject the latter's federal pension to his child support and alimony obligations. While it is true that such a circumstance could deprive the State court of power to issue an *in personam* monetary judgment against the deserting husband, *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877), his actual or constructive presence

---

* Judge Craven participated in the decision of this case but died before the opinion was prepared. 28 U.S.C. § 46(d).

within the State is not a prerequisite to the State court's issuance of a judgment *quasi-in-rem*, affecting property of the defendant located within the forum State. Such property, of course, may include obligations owing to the defendant by third party debtors, *Pennington v. Fourth Nat'l Bank of Cincinnati*, 243 U.S. 269, 37 S.Ct. 282, 61 L.Ed. 713 (1917); *Harris v. Balk*, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), of which, in this case, the United States is one.

There appears to be no obstacle to the naming of the United States as the debtor in a garnishment or similar proceeding in a court of West Virginia as far as federal law is concerned.[1] The government concedes this, and on oral argument its attorney advised us that, so far as he was concerned, he would not attempt to remove to the federal district court an action filed in the State court against the United States as debtor only in this case, the purpose being to subject moneys owing to the husband to the claim of the wife, but would submit to the jurisdiction of the State court for that purpose. We note in passing that there is no constitutional due process objection to a State court alimony award against the bank account of an absent husband, *Pennington*, supra, and that there is no jurisdictional bar as such to enforcing an alimony award of a State court previously made, *Barber*, supra. If the United States submits to the jurisdiction of a State court as seems likely, Mrs. Diaz will be able to have the merits of her claim decided there. It is thus unlikely that any substantial federal question will remain in the case unless it be the claim that § 659 creates a new federal cause of action.

Indeed, it appears that the purpose and effect of 42 U.S.C. § 659 is to waive the sovereign immunity of the United States for garnishment and like purposes in a limited class of State court actions involving the support obligations of government employees receiving, for example, federal pensions. The number of district court opinions, however, that have construed the statute have consistently rejected the view that either a new federal cause of action was created, or that any further jurisdiction was conferred upon the federal courts. See, e.g., *Popple v. United States*, 416 F.Supp. 1227 (W.D.N.Y.1976); *Wilhelm v. United States Dep't of Air Force, Accounting and Finance Center*, 418 F.Supp. 162 (S.D.Tex. 1976); *Morrison v. Morrison*, 408 F.Supp. 315 (N.D.Tex.1976).[2]

---

1. Of course, a right to subject the moneys to the claim of Mrs. Diaz must exist under State law. Chapter 38, Article 7, of the West Virginia Code, for example, sets forth certain grounds and procedures pertaining to attachments and garnishments, in particular W.Va. Code §§ 38-7-1 and 38-7-15. Attachment is authorized for the recovery of claims arising out of contract or damages for a wrong. While it is true that in *De Lung v. Baer*, 118 W.Va. 147, 189 S.E. 94 (1936), it was held that a garnishment may not issue for the recovery of a wife's litigation costs during the pendency of her suit for divorce, for the reason that the claim was not one arising out of tort or contract, we do not think this case necessarily forecloses a West Virginia court from holding an action for alimony and child support, as opposed to suit money, to be one arising out of an implied contractual obligation on the part of a deserting husband, or that the wife may otherwise be entitled to claim against a fund within the jurisdiction of that court. Needless to say, this is not a matter we can decide for West Virginia, and a definitive construction of State law may come only from that court.

2. The legislative history of 42 U.S.C. § 659 clearly reveals the problem with which Congress was attempting to deal:

"State officials have recommended that legislation be enacted permitting garnishment and attachment of Federal wages and other obligations (such as income tax refunds) where a support order or judgment exists. At the present time, the pay of Federal employees, including military personnel, is not subject to attachment for purposes of enforcing court orders, including orders for child support or alimony. The basis for this exemption is apparently a finding by the courts that the attachment procedure involves the immunity of the United States to suits to which it has not consented.

"The Committee bill would specifically provide that the wages of Federal employees, including military personnel, would be subject to garnishment in support and alimony cases. In addition, annuities and other payments under Federal programs in which entitlement is based on employment would also be subject to attachment for support and alimony payments." S.Rep.No.93–1356, 93d Cong., 2d Sess. (1974),

The question of federal court jurisdiction over this case is a substantial one for more than one reason as we have explained. We may be obliged to reach this question if the case comes before us again after action by the West Virginia courts. For the present, we vacate the judgment of dismissal of the district court and remand with instructions to enter an order abstaining from the further assertion of any jurisdiction it may have, pending a State court disposition.

VACATED AND REMANDED WITH INSTRUCTIONS.

4 U.S.Code Cong. and Admin.News, at p. 8157. See *Wilhelm v. United States Dep't of Air Force*, 418 F.Supp. 162, 164 (S.D.Tex. 1976), and cases cited therein.