DONALD H. ABRAMS

*v.*

WEST VIRGINIA RACING COMMISSION

(No. CC912)

Decided February 26, 1980.

*Rice, Hannis & Douglas and Charles F. Printz, Jr.*, for plaintiff.

*Chauncey H. Browning*, Attorney General, *James B. Hoover*, Assistant Attorney General, for defendant.

MILLER, JUSTICE:

This case comes to us upon a certified question from the United States District Court for the Southern Dis-

trict of West Virginia [herein federal court] pursuant to W. Va. Code, 51-1A-1, *et seq.* We are asked whether W. Va. Code, 19-23-8(b)(3), and Rule 712 of the Rules of Racing of the West Virginia Racing Commission [herein racing commission] violate the Due Process or Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution or the Due Process Clause of the West Virginia Constitution. For reasons herein set out, we decline to answer.

This action was initially filed by Mr. Donald H. Abrams in the federal court after he had been denied an owner's license by the racing commission. The basis for the administrative denial was W. Va. Code, 19-23-8(b)(3), and Rule 712 of the Rules of Racing, which preclude the licensing of an individual who has been convicted of a felony or crime involving moral turpitude within ten years prior to the date of his application.[1]

Abrams' suit was based on the claim that these provisions were constitutionally infirm under the Fourteenth Amendment, apparently relying on *Miller v. Carter*, 547 F.2d 1314 (7th Cir. 1977), *aff'd by an equally divided Court*, 434 U.S. 356, 54 L. Ed. 2d 603, 98 S.Ct. 786 (1978).[2] Abrams also alleged that the statute and rule violated the Due Process Clause of this State's Constitution. The federal court certified the legal question to this Court.[3]

---

[1] The precise language of W. Va. Code, 19-23-8(b)(3), is that the racing commission may deny application and refuse to issue a license or permit to any applicant who "has been convicted, within ten years prior to the date of such application, of an offense which under the law of this State, of any other state or of the United States of America, shall constitute a felony or a crime involving moral turpitude."

[2] *Miller* involved a Chicago ordinance which prohibited a public chauffeur's license to anyone convicted of a crime "involving the use of a deadly weapon, traffic in narcotic drugs, the infamous crimes against nature, incest or rape."

[3] The District Court's certification order, at 2, contains this statement as to its reasons for certification:

"The Court notes that the highest court of the State of West Virginia, the Supreme Court of Appeals of West Virginia, has not passed on the question of whether W.Va. Code § 19-23-8 and Rule

In *Morningstar v. Black & Decker Manufacturing Co.*, ___ W.Va. ___, 253 S.E.2d 666, 668-69 (1979), we discussed at some length the policy underlying our certification statute, W. Va. Code, 51-1A-1, *et seq.* We pointed out that this type of statute:

> "[H]as largely been a response to the Abstention Doctrine, which was a necessary outgrowth of *Erie Railroad v. Tompkins* [304 U.S. 64, 82 L. Ed. 1188, 58 S.Ct. 817, 114 A.L.R. 1487 (1938)], *supra.* In *Erie*, the Court held that in diversity cases federal courts were no longer 'free to exercise an independent judgment as to what the common law of the State is - or should be; . . .' but must apply the substantive law as evolved by the state either through its statutes or its court decisions. 304 U.S. at 71, 82 L.Ed. at 1190, 58 S.Ct. at 819, 114 A.L.R. at 1489. . . ."

*Morningstar* discussed other aspects of the certification statute. In an examination of the statutory certification language, we found it to be discretionary and not mandatory. *Morningstar* quoted the following statement from the Commissioners' Comment to Section 1 of the Uniform Certification of Questions of Law Act:

> "This section provides that the highest court of the state has the right to answer questions certified to it; it is not mandatory. Under some circumstances it is possible that the court might decide not to answer a certified question. . . ." [Uniform Certification of Questions of Law Act (U.L.A.) § 1, Comment, at 52] [___ W.Va. at ___, 253 S.E.2d at 669].

We conclude that Code, 51-1A-1, *et seq.*, relating to the certification of questions of law to this Court from foreign courts, does not impose an absolute duty on this Court to answer such questions.

We also suggested in *Morningstar* that the basic usefulness of the certification statute was "to resolve ambi-

---

712 of the Rules of Racing violate the applicable provisions of the Constitution of the State of West Virginia or the Fourteenth Amendment to the Constitution of the United States."

guities or unanswered questions" about our State law and stated that other courts have come to the same conclusion. [_____ W.Va. at _____, 253 S.E.2d at 669].

While we recognize that one of the beneficial purposes of the certification statute is to provide foreign courts with the benefit of our determination of West Virginia law, we do not deem it appropriate in the present case.

There can be little doubt that where a case is filed in federal court asserting a violation of the United States Constitution, that court has jurisdiction to decide the case unless the claim is entirely frivolous. *Mt. Healthy School District Board of Education v. Doyle*, 429 U.S. 274, 50 L. Ed. 2d 471, 97 S.Ct. 568 (1977); *Hagans v. Lavine*, 415 U.S. 528, 39 L. Ed. 2d 577, 94 S.Ct. 1372 (1974). Indeed, the United States Supreme Court stated in *Zwickler v. Koota*, 389 U.S. 241, 248, 19 L. Ed. 2d 444, 450, 88 S.Ct. 391, 395 (1967):

> "In ... expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, '... to guard, enforce, and protect every right granted or secured by the Constitution of the United States ...,' [citation omitted]...."

Nor can there be doubt that an interpretation of the United States Constitution by a federal court will override that of a state court. *Oregon v. Hass*, 420 U.S. 714, 43 L. Ed. 2d 570, 95 S.Ct. 1215 (1975). A resolution by a state court of a federal constitutional claim is not binding on the federal courts. *See, e.g., Jackson v. Virginia*, _____ U.S. _____ , 61 L. Ed. 2d 560, 99 S.Ct. _____ (1979); *Fay v. Noia*, 372 U.S. 391, 9 L. Ed. 2d 837, 83 S.Ct. 822 (1963); *Brown v. Allen*, 344 U.S. 443, 97 L. Ed. 469, 73 S.Ct. 397 (1953). Thus, it is clear that any holding of this Court pertaining to the Fourteenth Amendment claim would be advisory at best.

This Court could choose to make a binding pronouncement on the scope of the Due Process Clause of the West Virginia Constitution. *Oregon v. Hass, supra.* However, as recognized in *Oregon v. Hass,* any such decision by this Court on this State constitutional issue would not foreclose the federal court from deciding upon a different federal standard and ignoring our State constitutional standard.

While the doctrine of pendent jurisdiction permits a federal court to decide ancillary nonfederal grounds in a case based on independent federal jurisdictional grounds, *United Mine Workers v. Gibbs,* 383 U.S. 715, 16 L. Ed. 2d 218, 86 S.Ct. 1130 (1966), we are not aware of any decision which requires the federal court to decide the nonfederal issue, particularly where the federal issue is dispositive of the case.[4]

In *White v. Edgar,* 320 A.2d 668 (Me. 1974), the court made a comprehensive analysis of its certification statute, which is similar to ours, and concluded that where the certified question involves an issue of the state court's construction of a state statute, which construction might avoid or modify a constitutional challenge to the statute, acceptance of the certification would be proper. Inherent in this concept is the premise that there is some ambiguity in the state statute which would provide a reasonable possibility that a state court might construe it so as to avoid or alter the ultimate constitutional issue.[5] In the present case, the statute

---

[4] A similar conclusion was reached by the same federal court certifying this case to us. In *National Market Reports, Inc. v. Brown,* 443 F. Supp. 1301, 1305 (S.D. W.Va. 1978), the three-judge district court stated:

"We are unaware of any federal statute which empowers, much less obligates, a federal district court to hear plaintiff's state law complaints. Standing alone, an attack upon a state statute on the sole ground that it violates state law is clearly not contemplated by the Congressional grant of either 'federal question' jurisdiction, 28 U.S.C. § 1331, or 'civil rights' jurisdiction, 28 U.S.C. § 1343. . . ."

[5] In *White v. Edgar,* 320 A.2d 668, 674 (Me. 1974), the court found this premise absent:

and regulation contain no ambiguity by which we could reasonably construe them to avoid or modify the constitutional issue. Moreover, the federal court's certification does not state or imply that the statute and regulation are ambiguous, but simply asks that we determine if their application violates due process or equal protection principles.

*White v. Edgar* recognizes another valid ground for the acceptance of a certification, *viz.*, where a peculiar or unique feature of our State Constitution might be dispositive of the case.[6] Here, we are not asked to construe a provision which is peculiar or unique to our State Constitution in that it has no counterpart in the Federal Constitution. The challenge to the statute and regulation rests upon parallel provisions concerning due process and equal protection, and therefore affords no basis for accepting the certification.[7] *See Wisconsin v. Con-*

---

"As to this [the federal constitutional question], there is not even a state law question of the *meaning* of the Maine statute under attack since 21 M.R.S.A. § 1(1), as here involved, is clear and unequivocal. Here absent, then, is any reasonable possibility that state court construction of 21 M.R.S.A. § 1(1) will avoid, or modify, the ultimate federal constitutional issue. . . ."

[6] In this respect, the court in *White v. Edgar, supra* at 680, quoted with approval the reasoning of Judge Friendly:

" 'Abstention is . . . justified when a state statute is subject to fair challenge under state constitutional provisions having no counterpart in the Federal Constitution [Reetz v. Bozanich, 397 U.S. 82, 25 L. Ed. 2d 68, 90 S.Ct. 788 (1970)]. Here . . . abstention may save the federal courts from a needless task and unnecessary confrontation with a state. On the other hand, a divided Court has held abstention to be improper where the state statute was clear and the state constitutional attack would be on the same basis as the federal [Wisconsin v. Constantineau, 400 U.S. 433, 27 L. Ed. 2d 515, 91 S.Ct. 507 (1971)].' Henry J. Friendly, Federal Jurisdiction: A General View (1973) (p. 93)."

[7] In *White v. Edgar*, the certification had been designed to avoid this question:

"The federal Court has wisely refrained from certifying to us questions under the parallel 'equal protection of the laws' and 'due process' clauses contained in . . . the Constitution of Maine (or of any other provisions of the Constitution of Maine which may be parallels of other federal constitutional provisions here involved). . . ." [320 A.2d at 684].

*stantineau*, 400 U.S. 433, 27 L. Ed. 2d 515, 91 S.Ct. 507 (1971).

Here, in its certification order the federal court cited *Moore v. Sims*, ____ U.S. ____, 60 L. Ed. 2d 994, 99 S.Ct. 2371 (1979); *Younger v. Harris*, 401 U.S. 37, 27 L. Ed. 2d 669, 91 S.Ct. 746 (1971); and *Fralin & Waldron, Inc. v. City of Martinsville*, 493 F.2d 481 (4th Cir. 1974), as providing the legal basis for the certification. We do not read these decisions as being applicable. Both *Moore v. Sims* and *Younger v. Harris* involved situations where a federal court was asked to intervene by way of an injunction to prohibit proceedings already initiated in the state courts. The Court found intervention unwarranted because there was no showing of great and immediate irreparable injury to the federal plaintiff in the state proceeding. Such a situation is not present in the case before us, since the entire proceeding was initiated in the federal court.

*Fralin & Waldron, Inc. v. City of Martinsville, supra,* involved a challenge in federal court in regard to city zoning ordinances on the basis that, as applied, they violated the federal constitutional rights of the plaintiff. The court determined that the zoning ordinances, together with local land use law, were ambiguous to the extent that the court should permit the state courts to construe the ordinances in order to determine whether the federal constitutional challenge could be avoided. *See Diaz v. Diaz*, 568 F.2d 1061 (4th Cir. 1977). As we have previously stated, no such ambiguity is asserted as to the statute and regulation involved in the present case.[8]

---

[8] It is conceivable that an issue might arise under W. Va. Code, 19-23-8(b)(3), as to whether a given crime constitutes "a felony or a crime involving moral turpitude" under "the law of this State, of any other state or of the United States of America." But this is not an issue in the present case, since the certification order finds that the plaintiff "entered a plea of guilty to an indictment in the United States District Court for the District of Columbia, charging him with conspiracy to obstruct justice in violation of 18 U.S.C. § 371, said violation being a felony."

The federal court relied, finally, upon *Shumard v. Foremost Insurance Co.*, No. 78-1508 (4th Cir. July 11, 1979) (unpublished). In *Shumard*, the Fourth Circuit certified to this Court a question requiring interpretation of a West Virginia insurance statute. The certified question does not involve a constitutional provision, and we have accepted the certification.

It may well be argued that our refusal to answer the certified question creates further delay in the litigation before us. However, the essential legal issue is that any answer we might give would not be binding on the federal court in its resolution of the federal constitutional claim. To say that the federal court might follow our reasoning is to confuse courtesy with the fundamental distinctions between federal and state courts.

In *Morningstar v. Black & Decker Manufacturing Co.*, ___ W.Va. ___, 253 S.E.2d 666 (1979), we answered federally certified questions relating to our substantive tort law. Under *Erie Railroad v. Tompkins*, 304 U.S. 64, 82 L. Ed. 1188, 58 S.Ct. 817 (1938), federal courts entertaining tort claims in diversity cases arising in this State are obliged to follow such determinations. *Morningstar*, however, involved no federal constitutional issue, which is the very heart of the prsent case. To repeat the rule of *Zwickler v. Koota*, 389 U.S. 241, 248, 19 L. Ed. 2d 444, 450, 88 S.Ct. 391, 395 (1967), a federal court must give "due respect to a suitor's choice of a federal forum for the . . . decision of his federal constitutional claims." Congress imposed this duty on the federal courts, not state courts.

We, therefore, conclude that where a certification request is made to this Court by a federal court under W. Va. Code, 51-1A-1, *et seq.*, with respect to a question involving a federal constitutional issue which cannot be limited or avoided by our resolution of ambiguous or peculiar State law, we will ordinarily decline the certification request, since the federal courts are charged with the primary duty of interpreting the Federal Constitution.

For the foregoing reasons, we decline to answer the certified question.

*Certified question declined.*

NEELY, CHIEF JUSTICE, *dissenting:*

I dissent on the grounds that when a Federal Court asks a question, it is only polite to give an answer. I am not an expert in Federal law and am unable to anticipate the thought processes of Federal judges who are. Accordingly, I am quite pleased to give to the Federal courts such information as they, in their discretion, deem necessary for the full resolution of any dispute. Since the Federal courts are entrusted with the administration of a body of law superior, by virtue of the supremacy clause, to State law in all its ramifications, I consider that the Federal Court does this Court an honor to consult us in these matters and I would accord them the courtesy of a reply.