**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KEVIN J. NEVIN; RENEE NEVIN, a
minor child, by her next friend and
natural father and guardian, Kevin
Nevin,
Plaintiffs-Appellants,

v.

No. 98-2619

MARLENE FREEDMAN, Officially and
individually; DANA ZEMKE,
Individually; SHIRLEY SKIRKANICH,
Individually; DANA PAIGE, Officially,
Acting Director; FAIRFAX COUNTY
DEPARTMENT OF FAMILY SERVICES,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, Leonie M. Brinkema, District Judges;
Thomas Rawles Jones, Jr., Magistrate Judge.
(CA-98-336-A)

Argued: October 27, 1999

Decided: December 29, 1999

Before WILKINSON, Chief Judge, and WILKINS and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John M. DiJoseph, KAVRUKOV, MEHROTRA & DIJOSEPH, L.L.P., Arlington, Virginia, for Appellants. James Edward Wilcox, Jr., Assistant County Attorney, Fairfax, Virginia, for Appellees. **ON BRIEF:** David P. Bobzien, County Attorney, Robert Lyndon Howell, Deputy County Attorney, Fairfax, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Kevin Nevin and his daughter Renee filed suit in federal district court against the Fairfax County Department of Family Services (DFS), the director of the DFS, and three DFS social workers. The Nevins claim that defendants by their actions with respect to the custody of Renee have violated the U.S. Constitution, the Virginia Constitution, a federal statute, and state tort law. The district court granted defendants' motion to dismiss. Finding no merit in any of the Nevins' claims, we affirm the judgment.

I.

In 1995, the Nevin family consisted of Kevin Nevin (hereinafter Nevin), his wife Kay Ticer Nevin, Renee (daughter of Kevin and Kay born in 1994) and Susan (Kay's eight-year-old daughter from a previous marriage). In November 1995, upon a petition of DFS, the Juvenile and Domestic Relations Court for Fairfax County entered an order finding that Renee and Susan were "abused and/or neglected children." Both Nevin and his wife stipulated that "had the evidence been presented, the Department would have proved by a preponderance of the evidence that [Susan and Renee] were abused and/or

2

neglected as defined in Virginia Code § 16.1-228." Subject to certain court-ordered conditions, custody remained with Nevin and his wife. In January 1996, Nevin was found in contempt for failing to comply with one of the conditions.

In February 1996, with "active assistance" from DFS official Dana Zemke, Kay left the marital home with both Renee and Susan to live with her parents, the Ticers. Nevin did not live in the Ticer home and had no control over the conditions of the home, although he did continue to see his family fairly regularly. On April 18, 1996, DFS officials filed an emergency removal petition that alleged the Ticer residence was "chaotic," "filthy" and unsuitable for children. The Juvenile Court awarded temporary custody of Renee to DFS and scheduled a preliminary hearing. DFS notified Nevin of the removal several days later.

The preliminary removal hearing was held in May 1996. The Juvenile Court decided to keep the removal order in effect. As a result, Renee was placed in foster care. DFS crafted Renee's foster care plan without seeking input from Nevin. Following Renee's placement in foster care, Nevin was restricted to between one and four and a half hours of supervised visitation with Renee per week. Nevin was also not permitted to take Renee with him to various parenting classes. Nevin alleges that during this period of time the DFS social workers' animus toward him foreclosed opportunities for him to either try to get his daughter back or at least to have more contact with her.

On August 7, 1997, Nevin and Renee (together the Nevins) filed a habeas petition in the Fairfax County Circuit Court. Nevin sought to regain custody over Renee based on a variety of alleged constitutional violations. On September 26, 1997, the court dismissed the Nevins' petition. The Nevins' appeal to the Virginia Supreme Court was dismissed because of their untimeliness in filing a Petition for Appeal.

In November and December 1997, the Juvenile Court held a hearing on the merits of the DFS abuse and/or neglect petition. The court found that DFS had shown by a preponderance of the evidence that Renee was an abused and/or neglected child and continued her custody with DFS. Nevin appealed to the Fairfax County Circuit Court.

3

The Nevins then sued DFS, the director of DFS (Dana Paige), and three DFS social workers (Marlene Freedman, Dana Zemke, and Shirley Skirkanich) in federal district court. The Nevins brought a § 1983 action alleging both constitutional and statutory violations, actions based on the Virginia Constitution, and two state law tort claims. Defendants filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss all of the Nevins' claims. On May 8, 1996, the district court, for reasons stated from the bench, granted defendants' motion to dismiss as to the following: all claims against DFS, all constitutional claims that have been adjudicated by state courts or that are "inextricably intertwined with the merits of a state court judgment," claims of violations of rights under the federal Adoption Assistance and Child Welfare Act, and all claims based on conduct by individual defendants in filing and pursuing the removal petition as well as for actions taken pursuant to a court order. The court deferred the motion to dismiss in all other respects pending submission of supplemental briefs addressing immunity issues.

On October 21, 1998, the district court, in a written opinion, dismissed the rest of the Nevins' claims. The court found that qualified immunity barred the Nevins' remaining claims based on federal law. The court also dismissed the Nevins' Virginia state law causes of action. The Nevins now appeal.

II.

With respect to the Nevins' federal constitutional claims, we must first determine if the Nevins have "alleged the deprivation of an actual constitutional right at all." Wilson v. Layne , 119 S. Ct. 1692, 1697 (1999) (internal quotation marks omitted). The Nevins first argue that the defendants have violated their substantive due process rights. We disagree. "Substantive due process does not categorically bar the government from altering parental custody rights." Weller v. Department of Soc. Serv., 901 F.2d 387, 392 (4th Cir. 1990). Rather, the government runs afoul of substantive due process only when its actions "shock the conscience." See, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1988); Weller, 901 F.2d at 391; Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980); Fitzgerald v. Williamson, 787 F.2d 403, 408 (8th Cir. 1986).

4

Nothing that happened to Nevin or Renee meets that definition. Nevin was a party to the original Juvenile Court proceeding in 1995 that determined that Renee was abused and/or neglected. In fact, Nevin stipulated that the DFS's evidence was sufficient to support that finding. Two months later, Nevin was found in contempt for violating a condition placed on him by the Juvenile Court order. In light of these facts, the subsequent decision not to give custody of Renee to Nevin does not seem conscience-shocking at all.

The Nevins also argue that their procedural due process rights have been violated. We agree with Nevin that he has a protectible liberty interest in the care and custody of his child. See Santosky v. Kramer, 455 U.S. 745, 753 (1982). But even accepting the Nevins' allegations as true, we cannot agree that the procedures afforded them were constitutionally deficient.

To be sure, no hearing was provided Nevin before custody of Renee was initially given DFS based on the emergency removal petition. But "[d]ue process does not mandate a prior hearing in cases where emergency action may be needed to protect a child." Weller, 901 F.2d at 393. "However, in those `extra-ordinary situations' where deprivation of a protected interest is permitted without prior process, the constitutional requirements of notice and an opportunity to be heard are not eliminated, but merely postponed." Id. (internal quotation marks omitted). Here Virginia's post-deprivation procedural safeguards satisfy the requirements of procedural due process. It is undisputed that Nevin was informed of his daughter's removal. Moreover, a removal hearing took place less than a month after the emergency removal, thereby "judicially ratify[ing] the state's emergency action." Id. at 396.

Nevin was then afforded ample process in his attempt to regain custody of and increase his visitation rights with his daughter. In November and December 1997, the Juvenile Court held the merits hearing on the DFS abuse and/or neglect petition. The court found that Renee was abused and/or neglected and continued her custody with DFS. Nevin was then allowed under Virginia law to appeal this order to the Fairfax County Circuit Court. Moreover, a guardian ad litem had represented Renee's interests throughout the abuse and neglect case.

5

In addition, subsequent to losing custody of Renee, Nevin filed two motions seeking orders to increase visitation rights with his daughter. He also filed a habeas corpus petition seeking the return of custody over Renee. Moreover, the version of Va. Code Ann.§ 16.1-281(C) in effect at the time provided Nevin with the right to petition the court for a review of Renee's foster care plan. Thus, even accepting the Nevins' allegations as true, we simply cannot hold that their federal due process rights have been violated in view of the full panoply of procedures afforded them under state law.

The Nevins also claim that the defendants violated the Virginia Constitution, state tort law, and the federal Adoption Assistance and Child Welfare Act. We have considered those claims and find them to be without merit.*

III.

Having failed to allege a deprivation of a federal right, the Nevins' claims amount to nothing more than an attempt to drag the federal courts into a matter of state domestic relations law. See Diaz v. Diaz, 568 F.2d 1061, 1062 (4th Cir. 1977) ("domestic relations matters are ... questions of singular significance to the administration of State affairs"). For the foregoing reasons, the judgment of the district court is

AFFIRMED.

_____

*The Nevins also argue that the magistrate improperly awarded fees to the defendants on two separate occasions. These orders, however, cannot be attacked on appeal as the Nevins have failed to comply with Fed. R. Civ. P. 72(a). Rule 72(a) requires objections to the order of a magistrate judge to be filed within 10 days of service of the order. And a party who fails to comply with Rule 72(a) waives his right to appeal a magistrate's order. See, e.g., Wells v. Shriners Hosp., 109 F.3d 198, 199 (4th Cir. 1997); Simpson v. Lear Astronics Corp., 77 F.3d 1170, 1174 (9th Cir. 1996); Illinois Conference of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking, 71 F.3d 1361, 1367-68 n.5 (7th Cir. 1995).