**FILED**

**May 22, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**County Commission of Fayette County,**
**Petitioner**

**v.)    No. 25-68** (S.D.W.Va. 2:21-cv-00307)

**Pardee and Curtin Realty,**
**Defendant Below, Respondent**

**MEMORANDUM DECISION**

The petitioner, the County Commission of Fayette County ("the County") and the respondent, Pardee and Curtin Realty, LLC ("Pardee"), have presented this Court with a certified question from the United States District Court for the Southern District of West Virginia.[1] The Uniform Certification of Questions of Law Act empowers this Court to answer a question certified from a federal court only "if the answer may be determinative of an issue in a pending cause in the certifying court[.]" W. Va. Code § 51-1A-3 (1996). While we accepted the question for review, the parties revealed that the order supporting the certified question is currently being reviewed on appeal. Because of the tentative nature of the certified question, we cannot say our answer will be determinative, so we decline to review the certified question. In this instance, a memorandum decision is appropriate pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

The County filed a broad lawsuit (styled *The County Commission of Fayette County, West Virginia, et al., v. National Grid NE Holdings 2 LLC, et al*, No. 2:21-cv-00307) in the district court generally seeking the environmental remediation of coal refuse piles in Fayette County, West Virginia. Amongst the County's claims was a suit under the Resource Conservation and Recovery Act ("RCRA," 42 U.S.C. § 6972) against several defendants, including respondent Pardee. The County alleged that Pardee owned surface lands that included coal refuse piles, and that Pardee should be liable for a portion of the costs to remediate those piles. Pardee, however, disputed owning coal refuse piles. Pardee asserted that it owned the surface tracts surrounding the piles and that its deeds to the tracts clearly excepted the environmentally contaminated areas.

The district court agreed with Pardee and, in an order dated March 21, 2023, granted summary judgment to Pardee. Relying upon that summary judgment order, Pardee then moved the district court for an award of its attorney's fees and costs claiming that it was a prevailing defendant under RCRA. The County resisted Pardee's motion by asserting it is a political subdivision entitled

---

[1] The County is represented by Michael O. Callaghan, Esq., while Pardee is represented by J. Mark Adkins, Esq. and William M. Lorensen, Esq.

to prosecutorial immunity under the West Virginia Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1 to -18 ("the Tort Claims Act").

The parties apparently did not provide any controlling authority to the district court. Accordingly, the district court certified the following question to us:

> Is a West Virginia political subdivision that brings a citizen suit under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972, entitled to prosecutorial immunity from being assessed a prevailing opponent's attorney fees and costs?

"This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court." Syl. Pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 522 S.E.2d 424 (1999).

The parties offered competing arguments in their briefs and oral arguments regarding whether immunities are afforded by the Tort Claims Act to attorney fees and costs. However, at oral argument, the parties revealed for the first time that the district court's March 21, 2023, summary judgment order – the basis for Pardee's motion for fees and costs – is currently on appeal to the United States Court of Appeals for the Fourth Circuit. As this Court recently noted, while "[t]his Court has endeavored to answer certified questions from federal courts where proper and practical . . . as a threshold matter, we must recognize the limits on our power to answer certified questions." *City of Huntington v. AmerisourceBergen Drug Corp.*, 251 W. Va. 637, 644, 915 S.E.2d 828, 835 (2025). The Uniform Certification of Questions of Law Act provides that this Court can answer a question from a federal court "if the answer may be *determinative of an issue* in a pending cause in the certifying court[.]" W. Va. Code § 51-1A-3 (emphasis added).

In *City of Huntington*, we found a determinative question to be "a question concerning a legal issue that substantially controls the case." 251 W. Va. at 645, 915 S.E.2d at 836. West Virginia Code § 51-1A-3 limits this Court to answering a question "determinative of an issue" in a pending federal court case, and in so doing it precludes this Court from answering a hypothetical, academic question not substantially controlling in the pending case. Because of the provisional, tentative nature of the district court's summary judgment order that is on appeal, the certified question arising from that order is also tentative, and no answer from this Court will necessarily substantially control the outcome of the federal court case. In sum, the Uniform Certification of Questions of Law Act precludes us from providing an advisory opinion like that sought by the parties through the certified question.

Certified question declined.

**ISSUED:** May 22, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Gerald M. Titus III
Judge Gregory L. Howard, sitting by temporary assignment

**DISSENTING:**

Judge Catie Wilkes Delligatti, sitting by temporary assignment

Justice Charles S. Trump IV, deeming himself disqualified, did not participate in the decision. Justice Thomas H. Ewing, deeming himself disqualified, did not participate in the decision.

Delligatti, Judge, dissenting:

I respectfully dissent from the majority's refusal to answer the question certified to this Court by the United States District Court for the Southern District of West Virginia (the "Southern District").

The Southern District propounded the following question: "Is a West Virginia political subdivision that brings a citizen suit under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972, entitled to prosecutorial immunity from being assessed a prevailing opponent's attorney fees and costs?"

The Southern District's Order of Certification to the Supreme Court of Appeals of West Virginia ("Certification Order") reviewed in detail Petitioner's commencement of a citizen suit under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B) ("RCRA") against Respondent and various other Defendants relating to coal refuse, or gob, piles. The Certification Order notes that the Southern District granted summary judgment in Respondent's favor, finding that the Petitioner's "contentions against [Respondent were] without merit under West Virginia law and nearly sanctionable under Federal Rule of Civil Procedure 11." Notably, the Southern District later granted summary judgment against all remaining defendants "due to the lack of evidence supporting the County's environmental allegations."

Petitioner then moved for an award of fees and costs, as permitted under RCRA and applicable federal law when "'the plaintiff's action was frivolous, unreasonable, or without foundation,' or if the plaintiff 'continued to litigate after it clearly became so.'" Certification Order, citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978). Petitioner requests $225,498.36 in attorneys' fees, expert witness fees, and costs incurred in the litigation. Respondent asserts that it is immune from liability pursuant to the Governmental Tort Claims and Insurance Reform Act. The Southern District then entered an Order of Certification to the Supreme Court of Appeals of West Virginia, indicating that it "believes that the answer to this question may be determinative for the award of attorney's fees. . . ."

The threshold question presented is whether this Court should answer the certified question. As established in *Abrams v. West Virginia Racing Commission*, "W.Va. Code § 51-1A-1, *et seq.*, relating to the certification of questions of law to this Court from foreign courts, does not impose an absolute duty on this Court to answer such questions." Syl. Pt. 1, *Abrams v. W. Va. Racing Comm'n*, 164 W. Va. 315, 315, 263 S.E.2d 103, 104 (1980). I am nevertheless persuaded by the wisdom of then-Chief Justice Neely's dissent:

3

> [W]hen a Federal Court asks a question, it is only polite to give an answer. I am not an expert in Federal law and am unable to anticipate the thought processes of Federal judges who are. Accordingly, I am quite pleased to give to the Federal courts such information as they, in their discretion, deem necessary for the full resolution of any dispute. Since the Federal courts are entrusted with the administration of a body of law superior, by virtue of the supremacy clause, to State law in all its ramifications, I consider that the Federal Court does this Court an honor to consult us in these matters and I would accord them the courtesy of a reply.

*Abrams*, 164 W. Va. at 323, 263 S.E.2d at 108 (Neely, C.J., dissenting). I am further persuaded by my colleague Justice Wooton's dissent in *City of Huntington v. AmerisourceBergen Drug Corp*, where he engaged in a thorough analysis of this Court's history relating to responding to certified questions, ultimately concluding that "[i]n enacting West Virginia Code section 51-1A-3, the West Virginia Legislature wisely gave this Court a flexible tool for resolving issues such as the one presented in this case." *City of Huntington v. AmerisourceBergen Drug Corp.*, 251 W. Va. 637, 652, 915 S.E.2d 828, 843 (2025) (Wooton, C.J., dissenting).

Nevertheless, the majority declines to answer because of the potential that the Southern District's grant of summary judgment could be reversed on appeal. I disagree with the premise that the summary judgment order entered by the Southern District is "provisional" or "tentative" in nature to the point that answering the certified question would be akin to rendering an advisory opinion. Rather, I am persuaded that the Southern District certified a question to this Court which will be determinative of its ability to award attorneys' fees in the underlying litigation, and I fail to see the utility of declining to answer based upon the mere potential for appellate reversal or the potential that the Southern District may not ultimately award attorneys' fees, especially when this Court set this matter for Rule 20 argument and the parties engaged in briefing and expended time and resources to obtain this answer.

The Southern District, confronted with a question of unsettled West Virginia law, exercised its statutory authority under W.Va. Code § 51-1A-3 to seek this Court's guidance—precisely the mechanism the Legislature created to promote the efficient administration of justice between our state and federal courts. A refusal to answer renders these expenditures futile and leaves the Southern District to resolve its question without this Court's guidance, increasing the likelihood of an outcome that may not faithfully reflect the law of this State, and potentially necessitating yet another round of appellate proceedings. The certification process exists to prevent precisely this kind of circular litigation.

I would answer the question in the negative. A West Virginia political subdivision that brings a citizen suit under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972, is not entitled to prosecutorial immunity from being assessed a prevailing opponent's attorneys' fees and costs. This is true for myriad reasons: 1) West Virginia, and its political subdivisions, cannot immunize itself from federal claims; 2) statutory immunities under the Governmental Tort Claims

4

and Insurance Reform Act apply only to tort claims, not to attorneys' fees; and 3) filing a citizen suit under RCRA is not a prosecutorial function.

First, United States Code is "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. No party has pointed to any authority that would permit a State to immunize its subdivisions from liability imposed under Federal law, presumably because such authority would be in direct contravention of the Supremacy Clause.

Second, even if the Supremacy Clause did not preclude state-law immunization from federal-law claims, it is inherent in the name itself that the Governmental *Tort* Claims and Insurance Reform Act does not immunize a political subdivision from attorneys' fees. Certainly, a political subdivision is immune from liability if "a loss or claim results from. . . prosecutorial functions." W.Va. Code § 29-12A-5(a)(2). However, such loss or claim must be based in *tort*, as evidenced not only by the name of the statute but also by prior analysis from this Court. See, e.g., Syl. Pt. 1 (in part), *Walker v. Meadows*, 206 W. Va. 78, 80, 521 S.E.2d 801, 803 (1999) ("W.Va. Code, 29-12A-5(a)(5) [1986], which provides, in relevant part, that a political subdivision is immune from *tort* liability for "the failure to provide, or the method of providing, police, law enforcement or fire protection. . . ." (emphasis added)); *see also* Syl. Pt. 1, in part, *Monongalia Cnty. Comm'n v. Stewart*, 251 W. Va. 442, 914 S.E.2d 677 (2024) (stating same); *Edward S. v. Raleigh Cnty. Hous. Auth.*, 248 W. Va. 458, 889 S.E.2d 31 (2023) ("West Virginia Code § 29-12A-5(a)(1) to (17) (1986) . . . 'lists seventeen specific types of acts or omissions covered by the *tort* immunity available under the Act to a political subdivision.'") (emphasis added).

In fact, Petitioner's interpretation of the Governmental Tort Claims and Insurance Reform Act, which would not permit fees to be shifted to political subdivisions, conflicts with other provisions of our state code, such as Section 29B-1-7, which provides that any person who is denied access to public records and who successfully brings a suit for enforcement "shall be entitled to recover his or her attorney fees and court costs *from the public body* that denied him or her access to the records." W.Va. Code § 29B-1-7 (emphasis added). Political subdivisions are not immune from assessment of attorneys' fees in general. Further, the fee shifting in this case is not related to a state law tort claim covered by the Governmental Tort Claims and Insurance Reform Act.

Third, a RCRA citizen suit is not a prosecutorial function. By its own definitions, a RCRA suit may be brought by "any person." 42 U.S.C. § 6972(a). It is, thus, not a function of the office, but rather something that the Commission, through the County Prosecuting Attorney, through a private attorney deputized as an assistant prosecuting attorney, chose to initiate, as any citizen could have done. Engaging in this voluntary litigation is not a prosecutorial function for which the County will enjoy prosecutorial immunity.

Thus, because a finding of State-law immunity from a Federal claim would be violative of the Supremacy Clause, because the Governmental Tort Claims and Immunities Act does not immunize political subdivisions from awards of attorneys' fees, and because initiating a RCRA citizen suit is not a prosecutorial function, I would answer the certified question in the negative.